WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Kelly A. Alcaide,

    Plaintiff,

v.

Commissioner of Social Security Administration,

    Defendant.

No. CV-18-01383-PHX-JJT

**ORDER**

At issue is the final decision of the Commissioner of Social Security, denying a request from Plaintiff Kelly A. Alcaide, on behalf of Margaret Mary Smith, for Disability Insurance Benefits (Doc. 9 at 758–760). Plaintiff filed a Complaint (Doc. 1) on May 3, 2018, asking this Court to review the denial of Ms. Smith's benefits. The Court has reviewed the briefs (Docs. 12, 16, 17) as well as the Administrative Record (Doc. 9) and now finds that the Administrative Law Judge (ALJ) committed legal error and based her decision on less than substantial evidence. Furthermore, the Court finds that the three factors for the credit-as-true test are met. Accordingly, the Court reverses the ALJ's decision and remands the case to the Social Security Administration for a calculation of benefits.

**I.    BACKGROUND**

Margaret Mary Smith originally applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Disability Income ("DI") on October 29, 2007 (the "original claims"), alleging disability beginning November 2, 2006. (R. at 115–127.) After Ms. Smith's application was denied initially and on reconsideration, she

requested a hearing, which was held on January 10, 2010. (R. at 19–39.) On April 28, 2010, an ALJ issued a decision denying Ms. Smith's original claims. (R. at 44–58.) On April 27, 2011, the Appeals Council upheld the ALJ's decision. (R. at 1–3.) On June 24, 2011, Ms. Smith filed an appeal to the federal district court. (R. at 819–827.)

While her first claim was pending, Ms. Smith filed a second application for DIB and DI (the "subsequent claims"). (R. at 1097–1108.) On December 18, 2013, an ALJ issued a favorable decision on the subsequent claims and established a disability onset date of April 29, 2010—the day after Ms. Smith's original claims were denied by the first ALJ. (R. at 907–912.)

On August 15, 2012, this Court reversed the first ALJ's denial of the original claims and remanded the case for a new administrative hearing to resolve "conflicting medical opinions regarding Plaintiff's ability to do work-related activities[.]" (R. at 870.) Plaintiff appealed the decision to the Ninth Circuit, asking for a remand for payment of benefits. (R. at 765.) The Ninth Circuit affirmed this Court's decision to remand for a new administrative hearing. (R. at 765.)

The Appeals Council affirmed the ALJ's approval of the subsequent claims and directed an ALJ on remand to consider disability for a closed period between November 2, 2006 and April 28, 2010. (R. at 903–905.) Ms. Smith passed away on May 23, 2016. (R. at 1019.) Kelly A. Alcaide continued the appeal on her behalf. (R. at 1019.) On July 6, 2017, an ALJ issued a decision denying disability benefits for the closed period between November 2, 2006 and April 28, 2010. (R. at 765–779.) On March 7, 2018, the Appeals Council denied Ms. Alcaide's request for review. (R. at 758–760.) The present appeal followed.

**A.  Medical Evidence**

Ms. Smith had multiple medical conditions. The Court will only address those that the parties discuss in their pleadings.[1]

---

[1] For example, the parties do not dispute the ALJ's findings regarding Plaintiff's macular degeneration, dizziness, or mental impairments, so the Court will not address these conditions.

1. **Treating Physicians**

    a. **Dr. Jeffrey Levine**

Dr. Jeffrey Levine treated Ms. Smith for her orthopedic conditions for several years. On November 6, 2006, Dr. Levine diagnosed Ms. Smith with cubital tunnel syndrome of the left elbow and a left frozen shoulder. (R. at 328.) Dr. Levine operated on her left elbow on December 14, 2006. (R. at 351–352, 358.) In January 2007, Ms. Smith reported that she had tripped and injured her left shoulder. (R. at 360.) Dr. Levine's January treatment notes stated that Ms. Smith was "doing extremely well," had "regained nearly full motion of the left shoulder," and had a "[f]ull range of motion" in her left elbow. (R. at 363.) But in February, Dr. Levine diagnosed Ms. Smith with a "high grade" tear in her left shoulder and noted that it was "very symptomatic." (R. at 367.) Dr. Levine first operated on Ms. Smith's left shoulder on March 20, 2007. (R. at 369–370.) During the procedure, he diagnosed and repaired several issues. (R. 369–370.) In May 2007, Dr. Levine noted that Ms. Smith was "doing reasonably well" but was "quite stiff" and had "minimal motion." (R. at 374.) In June and July, Dr. Levine reported that Ms. Smith was doing "very well." (R. at 377.) But by August, Dr. Levine opined that Ms. Smith was "not doing well" due to pain in her left shoulder and left elbow. (R. at 375.)

Dr. Levine performed a second operation on Ms. Smith's left shoulder on December 4, 2007. (R. at 388.) Again, he found several issues in the joint and made repairs. (R. at 388.) At Ms. Smith's follow-up appointment, Dr. Levine stated that her shoulder and wound looked "excellent." (R. at 393.) In January 2008, he stated that her pain was "quite minimal" and referred her to physical therapy (but did not prescribe pain medications due to her allergies to them.) (R. at 399.) In February, Dr. Levine noted that Ms. Smith had "minimal, if any, pain" in her left shoulder but reported symptoms in her right shoulder (R. at 403.) In March 2008, Dr. Levine found that Ms. Smith had "regained excellent motion" of her left shoulder. (R. at 567.) In April 2008, Dr. Levine noted that an EMG and nerve conduction study substantiated an "abnormality of the lower extremities" and recommended a consultation with an orthopedic surgeon for Ms. Smith's lower back

problems. (R. at 566.) He stated that Ms. Smith's left shoulder was "improving markedly" with physical therapy. (R. at 566.)

In November 2007, Ms. Smith reported to Dr. Levine that she had hip and knee pain. (R. at 387.) Dr. Levine noted that she had osteoarthritis in all joints. (R. at 387.) He found only mild tearing in an ultrasound of her knee. (R. at 393.) On May 20, 2008, Dr. Levine saw Ms. Smith for lower back pain, leg pain, and substantial right hip and left knee pain. (R. at 564-565.) Dr. Levine recommended consultation with a neurosurgeon regarding her lower back and procedures for her right hip and left knee. (R. at 565.)

Dr. Levine assessed Ms. Smith's ability to do work-related activities on April 14, 2008 and found that she could: stand and/or walk for less than 2 hours in an 8-hour workday; sit for 2 hours in an 8-hour workday; and lift or carry less than 10 pounds. (R. at 553–55.) Dr. Levine opined that Ms. Smith's pain was moderately severe and could be reasonably expected to result from objective medical findings. (R. at 556.) Furthermore, Dr. Levine stated that Ms. Smith would not be able to sustain work on a regular and continuing basis. (R. at 560.)

### b. Dr. Tutankhamen Pappoe

Dr. Tutankhamen Pappoe, a spinal care specialist, treated Ms. Smith from November 2007 through February 2008. (R. at 307–322.) When Ms. Smith first saw Dr. Pappoe on November 5, 2007, she reported pain in her neck, shoulders, lower back, and legs. (R. at 307.) Dr. Pappoe diagnosed her with cervical facet syndrome, lumbar facet syndrome, and lumbar radiculopathy, and ordered an MRI of her spine. (R. at 307.) Dr. Pappoe's December 11 treatment notes show three additional diagnoses—a herniated disc, cervical spondylosis, and lumbar spondylosis—and an order for steroid injections, which Ms. Smith received on January 16, 2008. (R. at 312–314.) At Ms. Smith's follow-up appointment on January 28, she reported a pain level of 7 out of 10, and Dr. Pappoe scheduled another round of steroid injections, which occurred on January 31. (R. at 315–319.) At Ms. Smith's final appointment, on February 11, she reported a pain level of 8 out

of 10 and felt that the treatments had failed. (R. at 320–322.) Dr. Pappoe referred her to a spine surgeon. (R. at 322.)

### c. Dr. Edward Song

Dr. Edward Song, a spine surgeon, saw Ms. Smith on March 13, 2008 and diagnosed her with degeneration of a lumbar disc. (R. at 548.) Dr. Song concluded that her likelihood of improvement from surgery was minimal. (R. at 551.) He recommended pain management rather than surgery. (R. at 551.)

## 2. Examining Physician

Dr. Wayne Broky examined Ms. Smith on November 17, 2008. (R. at 617-622.) He observed that she walked normally, had a tender spine, and had multiple tender points characteristic of fibromyalgia. (R. at 618.) Dr. Broky decided that Ms. Smith could: stand and/or walk 6 to 8 hours in an 8-hour workday; sit without limitation; frequently lift or carry 10 pounds; and occasionally lift or carry 50 pounds. (R. at 620.)

## 3. Non-Examining Physician

On March 4, 2009, Dr. Thomas Glodek reviewed Ms. Smith's medical records and concluded that she could: stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently lift 10 pounds; and occasionally lift 20 pounds. (R. 539–46.)

## B. Hearing Testimony

Ms. Smith only testified at her January 20, 2010 hearing. (R. at 23–36.) She passed away before the February 17, 2017 hearing. Ms. Smith's daughter, Kelly Alcaide, appeared on her behalf at that hearing but did not testify. (R. at 794, 804.)

### 1. Ms. Smith's Testimony at January 20, 2010 Hearing

On January 20, 2010 Ms. Smith testified before ALJ Joan Knight. (R. at 23–36.) Plaintiff testified that she was initially unable to work due to problems with her left shoulder. (R. at 25.) She reported that her left shoulder improved after several surgeries, but then she started having problems with her right shoulder. (R. at 25.) Ms. Smith also stated she had knee problems and that surgical procedures to treat her knees were only

"temporarily successful." (R. at 26.) She said she had knee braces but could only wear them while sitting. (R. at 29.) Ms. Smith described pain in her back and legs— "twisty burning pain that pulsates" and "sharp stabbing pain … that radiates"—when she sat or stood for too long. (R. at 27.)

Ms. Smith testified that she typically sat in her recliner six hours out of an eight-hour day. (R. at 29.) She stated that her roommate "basically takes care of most of the housework," although she helped with laundry and dishes. (R. at 32.) Ms. Smith said that she could only be on her feet for 10 minutes at a time. (R. 32.) She stated that she was able to drive but found driving stressful. (R. at 33.) She could go to the grocery store but needed to lean on the shopping cart and take a break to sit down. (R. at 33.) Ms. Smith testified that she could walk for five minutes—or 10 minutes if she forced herself. (R. at 34.)

### 2. Vocational Expert's Testimony at February 17, 2017 Hearing

Marcos Molinar, a vocational expert, testified that Ms. Smith's past work as a keno writer and keno shift manager required "light exertion." (R. at 804–807.) Mr. Molinar opined that a hypothetical individual with the same past work experience as Ms. Smith and a limitation to work at the "light" exertional level could perform the same past work. (R. at 808-09). He opined that an individual who could stand and/or walk six to eight hours and had no sitting restrictions could also perform the past work. (R. at 809.) However, Mr. Molinar stated that an individual who could stand and/or walk for less than two hours and sit for less than two hours could not work full-time; neither could an individual who was frequently in moderately severe pain. (R. at 810–811.)

### C. The ALJ's Opinion

ALJ Carla Waters issued an opinion dated July 6, 2017, in which she concluded that Ms. Smith was not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act from November 2, 2006 through April 28, 2010. (R. at 779.) Specifically, the ALJ concluded that Ms. Smith "retained the ability to perform her past relevant work of keno writer and keno shift manager / card room supervisor as normally performed." (R. at 779.)

The ALJ found that Ms. Smith had the following severe impairments—"diabetes mellitus, thyroid disorder, status post left rotator cuff tear with multiple surgical procedures, status post cubital tunnel release, obesity, knee impairment, status post diagnostic arthroscopy, cervical and lumbar facet syndrome, lumbar radiculopathy, and cervical and lumbar spondylosis"—which, together, resulted in more than minimal limitations in her ability to perform work-related activities. (R. at 768.) But, according to the ALJ, Ms. Smith still "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (R. at 771.) Specifically, the ALJ found that Ms. Smith could stand and/or walk for 6 to 8 hours, had no sitting limitations, and could lift and carry 10 pounds frequently and 20 pounds occasionally. (R. at 771.)

While the ALJ believed that Ms. Smith had a medically determinable impairment that could reasonably be expected to produce her pain and other symptoms, she decided that Ms. Smith's statements concerning the intensity, persistence and limiting effects of her symptoms "were not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 771–72.) The ALJ focused on Ms. Smith's description of the limitations caused by her orthopedic impairments and found it to be "unsupported by the medical evidence." (R. at 773.) First, the ALJ noted that Ms. Smith had "good results" after treatments for her orthopedic impairments, pointing out several positive reports from Dr. Levine's treatment records regarding the condition of Ms. Smith's shoulders, arms, and hands. (R. at 772–74.) Next, the ALJ discounted Ms. Smith's physical therapy records—which showed Ms. Smith had a decreased range of motion in multiple areas of her body—as being inconsistent with the findings of the specialists who treated Ms. Smith. (R. at 774.) Then, the ALJ noted that Dr. Pappoe, the spine specialist, stated that Ms. Smith had "a full range of motion" in her lumbar and cervical spine and that Dr. Song, the spine surgeon, indicated that Ms. Smith's November 2007 MRI showed no significant abnormalities and "did not order any further imaging studies [or] recommend surgery." (R. at 774.) Finally, the ALJ relied on notes from consultative examiners Dr. Richard Palmer and Dr. Wayne Broky. (R. at 775.)

The ALJ found that Ms. Smith's statements of activities of daily living—including taking care of pets, preparing simple meals, and performing simple housework—were inconsistent with her allegations of the "debilitating limitations" caused by her impairments. (R. at 776.) In addition, the ALJ noted that Ms. Smith's explanation for why she stopped working contained inconsistencies. (R. at 776.)

The ALJ considered the various medical providers' opinions regarding Ms. Smith's residual functional capacity ("RFC"). (R. at 776–778.) She assigned "partial weight" to the State agency medical consultants "because they were consistent with the record as a whole[.]" (R. at 776.) The ALJ gave "[g]reater weight" to Dr. Levine's opinion that Plaintiff's orthopedic impairments were severe. (R. at 776.) But she also gave "greater weight" to the State agency's opinion that Plaintiff's residual functional capacity allowed her to perform light work. (R. at 776.) The ALJ gave "partial weight" to Dr. Broky's opinion but found that "the medical evidence shows that the claimant was more limited than determined in this opinion based on [Ms. Smith's] subjective reports of pain." (R. at 777.)

The ALJ gave minimal weight to Dr. Levine's April 14, 2008 opinion about Ms. Smith's RFC. (R. at 777.) The ALJ opined that the "degree of limitation provided was not supported by Dr. Levine's treatment records." (R. at 777.) She found that Dr. Levine's assessment of Ms. Smith's pain level was contradicted by the "many occasions Dr. Levine's treatment records state [Ms. Smith] is doing very well with minimal pain and not using pain medication." (R. at 777.) The ALJ found that the evidence about Ms. Smith's daily living activities was at odds with Dr. Levine's opinion about her limitations and pain level. (R. at 778.) The ALJ concluded that Ms. Smith's RFC allowed her to perform her past relevant work as a keno writer and keno shift manager, which Mr. Molinar opined was "light in exertion." (R. at 779.)

## II. LEGAL STANDARDS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set

aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age,

education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

The argument in this case relates to steps four and five—whether Ms. Smith's residual functional capacity between November 2, 2006 and April 28, 2010 allowed her to perform her past work or any other work. Plaintiff raises only one argument in her Opening Brief—that "the ALJ committed materially harmful error by rejecting the treating physician's assessments, instead according 'greater weight' to the opinions of state agency reviewers who neither examined Smith nor reviewed the entire medical record." (Doc. 12, Pl.'s Br. at 14.) Defendant filed a Response Brief, (Doc. 16, Resp.), arguing that the ALJ's decision was supported by substantial evidence and urging the Court to affirm. According to Defendant, "[t]he ALJ reasonably rejected the opinion of Dr. Levine because it was unsupported by his own treatment records, the medical record as a whole, and inconsistencies in Plaintiff's symptom allegations." (Resp. at 9.)

#### A. The ALJ Erred in Rejecting Dr. Levine's Conclusions

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* Dr. Levine's opinion about Plaintiff's residual functioning capacity was contradicted by some evidence in the record, so the ALJ was required to give "specific and legitimate reasons" for rejecting it. *See id.*

The ALJ's explanation for rejecting Dr. Levine's opinion did not contain specific and legitimate reasons to do so and was not supported by substantial evidence. First, the ALJ alleged that Dr. Levine's opinion was unsupported by his own treatment records because they stated "on many occasions" that Ms. Smith was in minimal pain and not using pain medication. (R. at 777.) Plaintiff alleges that the ALJ did not support this reason with

substantial evidence, but rather with "sparse citations" to the record. (Br. at 16.) Further, Plaintiff argues that the ALJ failed to properly differentiate between Dr. Levine's observations of Ms. Smith during office visits and his assessment of a Ms. Smith's capacity to function in the workplace. (Br. at 16.)

The Court agrees with Plaintiff. Although Dr. Levine's treatment records occasionally stated Ms. Smith was "doing well," other evidence—including treatment records from Dr. Levine, Dr. Pappoe, and Dr. Song—indicated that she had significant pain in her back, shoulders, knees, and hip, and legs. Dr. Levine's treatment records show that Ms. Smith did not take pain medication due to an allergy—not, as the ALJ summarily concluded—because her pain was not severe enough. The record shows that Ms. Smith was willing to undergo surgical procedures and epidural injections to attempt to treat and repair her conditions, but nothing provided lasting relief from her symptoms.

Second, the ALJ stated that Dr. Levine's opinion conflicted with Ms. Smith's reported daily living activities. However, Ms. Smith's testimony indicates that she was extremely limited in her ability to complete daily living activities and that her roommate did the majority of the housework. Her ability to carry out occasional activities of daily living does not make her reports of functional limitations less credible. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Furthermore, the ALJ failed to consider factors such as the length of the treating relationship, frequency of examination, and nature and extent of the treating relationship, 20 C.F.R. § 404.1527(c)(2)–(6), and "[t]his failure alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Accordingly, the Court finds that the ALJ committed an error of law when she rejected the conclusions of a treating physician's medical opinion without "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164.

### B. The Credit-As-True Rule Applies

The credit-as-true rule only applies in cases that raise "rare circumstances" that permit the Court to depart from the ordinary remand rule. *Treichler v. Comm'r of Soc. Sec.*

*Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when three elements are present: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Levine's opinion that Ms. Smith could only: stand and/or walk for less than 2 hours in an 8-hour workday; sit for 2 hours in an 8-hour workday; and lift or carry less than 10 pounds. If this evidence is properly credited, Ms. Smith would fit the definition of disabled because, according to the vocational expert, she would be unable to perform any work. Therefore, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve.

**IT IS THEREFORE ORDERED** reversing the April 28, 2010 decision of the Administrative Law Judge (R. at 907–912), as upheld by the Appeals Council on April 27, 2011 (R. at 1–3).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 19th day of June, 2019.

Honorable John J. Tuchi
United States District Judge